## RHODE ISLAND LITHOGRAPH CORPORATION

v.

**R. Gary CLARK, Tax Administrator.**[1]

**No. 84–140–M.P.**

Supreme Court of Rhode Island.

Jan. 9, 1987.

1. R. Gary Clark became tax administrator on January 1, 1985, and is therefore substituted as party defendant for John H. Norberg, who was tax administrator at the time of this assessment.

Amedeo C. Merolla, Asquith Merolla Anderson Ryan & Wiley, Providence, for plaintiff.

Bernard J. Lemos, Legal Counsel for R.I. Division of Taxation, Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This is a petition for certiorari wherein Rhode Island Lithograph Company (taxpayer) seeks review of a judgment of the District Court that affirmed a decision of the tax administrator requiring the taxpayer to pay certain sales and use taxes on equipment used in the lithographic and printing process. We affirm the judgment of the District Court. The facts as set forth in the findings of the tax administrator and as sustained by the trial justice (insofar as pertinent to the present aspect of the controversy) are as follows:

"1. Rhode Island Lithograph Corporation (taxpayer) prints catalogs, brochures and other printed material.

"2. The standard printing process of the taxpayer begins when it receives 'artwork', i.e., a photograph or negative from a customer. The artwork is photographed by a camera which separates the artwork into four color separations.

"3. The color separations are photographed by camera onto raw film which is subsequently processed into a four-part photograph.

"4. The four-part photograph is put through a process which results in a 'plastic mask' which is placed on a graft making machine which produces a 'proof' for customer approval.

"5. The film used in the process is either discarded or turned over to the customer upon request.

"6. Upon approval by the customer the plastic mask goes onto a plate maker which burns the plastic mask onto the lithographic plate which produces a finished plate.

"7. The finished plate is mounted on a press which is inked for color and printed material is produced on paper. The plate is subsequently discarded by the taxpayer.

"8. In-state customers pay a sales tax on the cost of the printing job.

"9. An audit was conducted on the taxpayer for the period July, 1977, through July, 1980, which resulted in an additional tax measure being assessed against the taxpayer in two areas: capital assets and supply and expense items.

"10. Included in the additional tax measure were items such as film, plates, electricity, a camera, a film plate maker, a rack, and assorted out-of-state purchases.

"11. The electricity portion of the assessment was the result of an estimate made by the auditor based upon comparable companies that were taxed on a non-manufacturing versus a manufacturing basis."

By agreement of the parties, issues concerning the taxing of the film have been withdrawn from this appeal and taxes and interest assessed on that portion of the manufacturing process have been returned to the taxpayer. Presently the controversy is limited to (1) plates used in the processing of printed materials, (2) a computer camera used in the printing process, and (3) plate-making machinery used in the printing process. After considering whether these items are exempt from taxation, we shall consider the taxpayer's due process claims.

### I

#### THE PLATE ISSUE

It is undisputed that after each printing job the plate is discarded by taypayer. The

tax administrator as well as the District Court concluded that these plates were not consumed directly in the process of manufacturing, as the taxpayer contended, but rather, had become obsolete upon their use. Accordingly, they held that the plates were not entitled to exemption under G.L.1956 (1980 Reenactment) § 44–18–30–H, which states in pertinent part, " '[c]onsumed directly' shall not mean or include mere obsolescence."

■ In its brief the taxpayer contends that the plates were in fact used up or worn out in the process of manufacturing because they oxidize and kink and cannot be used any further for other jobs. This argument would be both forceful and persuasive if the transcript of the testimony before the tax administrator provided factual support for such contention. Unfortunately, an examination of the transcript does not contain testimony tending to show that these plates oxidize or kink or cannot be used further for other jobs. It is a settled rule in this jurisdiction that tax-exemption statutes are construed against the taxpayer and further that the taxpayer must discharge the burden of proof in establishing by competent evidence that it is entitled to an exemption. *Rhode Island Recreational Building Authority v. East Greenwich Fire District*, 505 A.2d 1139 (R.I.1986); *American Hoechst Corp. v. Norberg*, 462 A.2d 369 (R.I.1983). The absence of evidence to establish the fact that plates are consumed in the manufacturing process as opposed to being merely discarded for obsolescence leads to the conclusion that the taxpayer did not sustain its burden of proof on this issue.

## II

## THE COMPUTER CAMERA AND THE PLATE–MAKING MACHINERY

The evidence in the case clearly supports the findings of fact that whereas the computer camera and the plate-making machinery are part of the manufacturing process, both are utilized in the manufacture of property not to be sold. Section 44–18–30(W)(i) does provide an exemption for "tools, dies and molds, and machinery and equipment * * * used directly and exclusively in an industrial plant in the actual manufacture * * * of tangible personal property *to be sold* * * *." (Emphasis added.)

However, item (iii) of the same section further provides that machinery used in the manufacture of tangible personal property "which is not to be sold * * * shall not be exempt under this paragraph even though such operation, function or purpose is an integral or essential part of a continuous production flow or manufacturing process."

■ Consequently, the clear and unambiguous language of the statute establishes beyond doubt that the camera and the plate maker, even though a part of the printing process, are not exempt because they are used to create further items in the process that are not themselves to be sold. The taxpayer's citation to numerous cases in other jurisdictions that exempt machinery or equipment used as a part of a continuous manufacturing process are of no assistance since the statutes in those states are not identical to those statutes that are controlling in this jurisdiction.

## III

## THE DUE PROCESS ISSUE

The taxpayer claims in its brief that the hearing procedures employed by the Division of Taxation constitute a denial of due process of law as guaranteed by the Constitution of the United States and the law of the State of Rhode Island. This argument is based upon the fact that at the time of the hearing before an officer of the division, the tax administrator was in effect, through his various subordinates, the prosecutor as well as the judge. This court has considered a similar challenge in *Herald Press, Inc. v. Norberg*, 122 R.I. 264, 405 A.2d 1171 (1979). In that case we observed:

"Although the tax administrator has the duty and responsibility to collect all taxes which are due and payable under appropriate and pertinent statutes, as interpreted and amplified by valid regulations, the tax administrator has an equal duty and responsibility to accord to every taxpayer every exemption and deduction to which he is entitled under those statutes and regulations. *The performance of these duties does not create an inherent bias on the part of the administrator which would preclude an impartial examination and weighing of the evidence or application of law.*" (Emphasis added.) *Id.* at 273, 405 A.2d at 1177.

An examination of the record in this case gives no indication that the hearing officer did not act with complete propriety in examining the evidence and finding facts consistent therewith. The District Court that reviewed the findings of the tax administrator pursuant to G.L.1956 (1977 Reenactment) § 42–35–15 determined that the findings of fact of the tax administrator as derived from the findings of the hearing officer were neither arbitrary nor clearly erroneous.

■ We are of the opinion that the taxpayer has failed to establish lack of due process under either federal or Rhode Island law in the procedures followed in the instant case.

For the reasons stated, the petition for certiorari is denied and dismissed. The writ heretofore issued is quashed. The papers in this case may be remanded to the District Court with our decision endorsed thereon.